IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JEFFREY WAYNE RUSH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 11-CV-336-WDS |
| | ) | No. 09-CR-30081-WDS |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER

**STIEHL, District Judge:**

Petitioner Jeffrey Wayne Rush feigned paralysis to obtain a discharge from the United States Army, avoiding deployment to Iraq. He then fraudulently collected disability benefits from the Department of Veteran's Affairs and the Social Security Administration. He used his supposed disability to bring a fraudulent lawsuit against an automobile manufacturer, obtaining a handicapped-equipped van. Petitioner is currently serving a 78-month prison sentence at the Federal Prison Camp in Millington, Tennessee. Now before the Court is his pro se motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 (Doc. 1), alleging ineffective assistance of counsel, and the government's response (Doc. 5).

### BACKGROUND

Petitioner was in the United States Army, assigned to the 24th Transportation Company. The Company received notice that it would be deployed to Iraq in support of Operation Iraqi Freedom. Before deployment, petitioner was in an accident while on duty, and the vehicle he was in rolled over. Upon examination at several facilities, petitioner was evaluated for possible spinal-cord injury. He told medical professionals that he was unable to walk and that he had lost

control of his bowel and bladder. They were not able to identify a physical cause for petitioner's condition, however. The Army concluded that petitioner's apparent paralysis was due to a conversion disorder.[1] He was given a medical discharge. Petitioner had been able to walk all along, but feigned disability to avoid deployment and obtain the discharge.

Through his status as a medically retired veteran, petitioner and his wife were able to obtain medical care and benefits at reduced cost. Together they conspired to defraud the Department of Veterans Affairs (V.A.) and the Social Security Administration (S.S.A.). Petitioner repeatedly represented to both agencies that he was paralyzed. Over a period of about three years, petitioner and his wife obtained about $107,857 in benefits from the V.A. and $28,730 from the S.S.A.

They also conspired to defraud an automobile manufacturer and a manufacturer of safety equipment. They brought a products-liability lawsuit against the manufacturers claiming that defects in petitioner's vehicle caused it to roll, leaving him paralyzed. Petitioner was able to obtain a handicapped-equipped van from the automobile manufacturer.

Petitioner was put under surveillance by federal agents. After gathering evidence and interviewing witnesses, the agents confronted petitioner at his home. Petitioner admitted that he could walk before his discharge from the Army, and he acknowledged his fraudulent schemes against the V.A., the S.S.A., and in the lawsuit. He was indicted and ultimately pleaded guilty to conspiracy to commit wire fraud involving the V.A., 18 U.S.C. §§ 1343, 1349; making a false statement to the S.S.A., 18 U.S.C. § 1001; and conspiracy to commit mail fraud, 18 U.S.C. § 1341, 1349, as well as mail fraud, § 1341, involving the lawsuit. He was given three concurrent sentences of 78 months and a fourth concurrent sentence of 60 months (Docs. 62, 65, Case No. 09-CR-30081). Petitioner signed a sentencing agreement waiving his right to contest any aspect of his conviction and sentence on appeal or in a collateral attack. He did not appeal.

---

[1] Conversion disorder is a mental disorder characterized by the loss or alteration of voluntary motor or sensory functioning, and which suggests physical illness, such as paralysis, though its basis is pychological and not physiological. DORLAND'S ONLINE MEDICAL DICTIONARY (32nd ed. 2012), http://dorlands.com/def.jsp?id=100031616 (last visited Nov. 5, 2013).

### DISCUSSION

Relief under 28 U.S.C. § 2255 is "reserved for extraordinary situations." *Prewitt v. United States,* 83 F.3d 812, 816 (7th Cir. 1996) (citing *Brecht v. Abrahamson,* 507 U.S. 619, 633–34 (1993)). A federal prisoner "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack" may move the sentencing court to vacate, set aside, or correct the sentence. § 2255(a).

To establish a claim of ineffective assistance of counsel under the Sixth Amendment, a prisoner must show (1) that "counsel's performance fell below an objective standard of reasonableness," and (2) that the prisoner's defense was prejudiced, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington.* 466 U.S. 688, 688, 694 (1984). In the context of a guilty plea, prejudice means there is a reasonable probability that, but for counsel's errors, the petitioner would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *Morales v. Boatwright*, 580 F.3d 653, 659 (7th Cir. 2009). The court may evaluate either element (performance or prejudice) first and, if it finds one unsupported, need not consider the other. *Strickland*, 466 U.S. at 697. Because counsel is presumed to be effective, the prisoner bears a heavy burden to establish ineffective assistance. *Shell v. United States*, 448 F.3d 951, 955 (7th Cir. 2006); *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995).

### ANALYSIS

Petitioner makes the following allegations and claims premised on the denial of his Sixth Amendment right to counsel:

> (1) His attorney failed to (a) interview the doctor who had diagnosed petitioner with conversion disorder, (b) challenge the voluntariness of petitioner's confession to V.A. and S.S.A. agents, (c)

3

research petitioner's prior medical history, or (d) research petitioner's products-liability lawsuit.

And, as a result of the attorney's failure to investigate, petitioner claims that his presentence report was full of false information.

(2) His attorney neglected to prepare petitioner for testimony, establish any defenses, or communicate well with petitioner, which made him feel concern about his chances at trial. He believes his attorney was not even prepared for the possibility of going to trial. He also believes his attorney misled him[2] about his potential sentence by telling him that if he went to trial he would be charged with an intended loss of $20 million, whereas petitioner says the government would have had to *prove* intended loss beyond a reasonable doubt at trial (or had to prove the actual loss, which was only $314,806.11).

Petitioner adds that his attorney said if petitioner wanted to gamble by going to trial, and risk more time away from his son, then go ahead and do it. Thus petitioner claims his attorney used his son as a factor against him.

(3) Petitioner says his attorney refused his request for a continuance the day before sentencing, when petitioner had not had time to read the plea deal (the sentencing agreement), which had just been reached. Petitioner claims he did not read the agreement until the day of sentencing ("in the courtroom right before the Judge walked in"). He also asserts that his attorney raised his voice while trying to convince petitioner to sign the agreement, telling petitioner he had faked an injury to avoid deployment.

(4) Petitioner claims that the V.A. did not have jurisdiction to investigate him or charge him with fraud because the Army had already given petitioner a medical discharge. Had petitioner's attorney researched military guidelines and procedure, the attorney would have had "a possible additional ground to argue."

In response to petitioner's motion, the government argues that he waived the right to bring this motion in his sentencing agreement. The agreement states that petitioner "knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if

---

[2] Petitioner characterizes this as his having been *coerced* into pleading guilty.

the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), the Defendant reserves the right to appeal the reasonableness of his sentence" (Doc. 61, § II, ¶ 1, No. 09-CR-30081-WDS). The waiver makes exceptions for retroactive interpretations of the law and retroactive amendments to the Sentencing Guidelines (*id.*, ¶ 2).

A defendant may waive his right to collateral review under § 2255 as a part of his plea agreement. *Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011); *Jones v. United States*, 167 F.3d 1142, 1144–45 (7th Cir. 1999). For the waiver to apply, the defendant's collateral attack must fall within the scope of the waiver. *United States v. Chapa*, 602 F.3d 865, 868 (7th Cir. 2010). If it does, the waiver is generally enforceable unless the defendant's acceptance of the plea agreement was not knowing and voluntary, the district court relied on a constitutionally impermissible factor (e.g., race), the sentence exceeded the statutory maximum, or the defendant claims ineffective assistance of counsel in connection with the negotiation of the agreement. *Jones*, 167 F.3d at 1144–45.

Here, petitioner's collateral attack falls within the scope of the waiver. He broadly waived the right to contest *any* aspect of his conviction and sentence that could be contested under Title 18 or Title 28, which includes this motion under Title 28. The exceptions in the waiver, for retroactive interpretations of the law and retroactive amendments to the Sentencing Guidelines, are not at issue. Only two of the exceptions to the general enforceability of a waiver are suggested by the allegations in petitioner's motion, namely, that petitioner's acceptance of the sentencing agreement was not knowing and voluntary, and ineffective assistance of counsel in connection with the negotiation of the agreement.

Petitioner suggests in various ways that his acceptance of the sentencing agreement was not knowing and voluntary. In ground two, he says his attorney neglected to prepare him for testimony or communicate with him enough, which made him feel afraid and uncertain about his chances at trial. He asserts that his attorney misled (or coerced) him by telling him that, if he

went to trial, the government would try him for an intended loss of $20 million. That was misleading, petitioner argues, because the government would have had to prove the $20 million loss beyond a reasonable doubt, while the actual loss, about $315,000, results in a much lower guidelines range. And petitioner claims his attorney used his son as a factor against him. In ground three, petitioner says he was not able to read the sentencing agreement until the day of sentencing, yet his attorney refused his request for a continuance. Finally, petitioner claims his attorney raised his voice while trying to convince petitioner to accept the plea deal.

Petitioner's claims appear to be aimed at his sentencing agreement; however, some of them mention going to trial. Going to trial was only an option before petitioner entered his guilty plea, however. Therefore, the Court will comment on his change of plea.

U.S. Magistrate Judge Clifford J. Proud found that petitioner was competent to understand the proceedings and to enter a knowing plea. Petitioner stated that he had had ample opportunity to discuss his case with his attorney, and that he was satisfied with his attorney's representation (Doc. 88, p. 6, Case No. 09-CR-30081-WDS). Further, petitioner stated that no one had threatened him or forced him to plead guilty (*id.*, p. 11). No one had made any promise or prediction about what his sentence would be (*id.*). Petitioner affirmed that he and his attorney had discussed the Sentencing Guidelines, how they might apply to his case, their advisory nature, and the factors the Court would consider under 18 U.S.C. § 3553 in deciding whether to depart from the Guidelines (*id.*, p. 12). Finally, petitioner agreed that he was pleading guilty because he was in fact guilty, and that he did so under his own free will (*id.*, pp. 18–19).

"The whole point" of the plea colloquy is to ensure that the plea was knowingly and voluntarily made. *United States v. Standiford*, 148 F.3d 864, 868 (7th Cir. 1998); *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987); Fed. R. Crim. P. 11(b). The record created in a Rule 11 hearing is given a "'presumption of verity.'" *Standiford*, 148 F.3d at 868 (quoting *United States v. Trussel*, 961 F.2d 685, 689 (7th Cir. 1992)). Thus a claim that can succeed only if the defendant lied to the judge during the plea colloquy "may be rejected out of hand unless the de-

fendant has a compelling explanation for the contradiction." *United States v. Peterson*, 414 F.3d 825, 827 (7th Cir. 2005); *accord United States v. Messino*, 55 F.3d 1241, 1248 (7th Cir. 1995). "Entry of a plea is not some empty ceremony, and statements made to a federal judge in open court are not trifles that defendants may elect to disregard." *United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999).

The Court already established that petitioner's guilty plea was knowing and voluntary when it adopted Magistrate Judge Proud's Report and Recommendation, and petitioner does not make any arguments now that call that into doubt. He says his attorney did not prepare him for testimony or otherwise prepare for trial. Yet petitioner swore under oath that he had had ample opportunity to discuss his case with his attorney, and that he was satisfied with his attorney's representation. Petitioner suggests he was misled about the intended loss. But he is incorrect about the government's having to prove intended loss at trial, and he could not have been misled about that point because the elements of his crimes were explained to him at the change of plea, and intended loss was not among those elements (Doc. 88, p. 9–10, No. 09-CR-30081). It was a sentencing factor.[3] The claim that petitioner's attorney used his son against him is frivolous; telling petitioner that he would be risking more time away from his son if he went to trial is not coercion. And petitioner swore that no one had threatened or forced him to plead guilty, and he was pleading guilty under his own free will. The Court finds that petitioner's claims contradict the statements he made at the change of plea, and he does not explain the contradictions.

As mentioned earlier, though, petitioner's claims appear to be aimed at his sentencing agreement. Even so, the reasoning above regarding statements made under oath during a plea colloquy (the Rule 11 hearing) applies. At sentencing, petitioner was sworn in. He agreed that he had read and executed the sentencing agreement (Doc. 89, Case No. 09-CR-30081-WDS). The Court then reviewed the entire agreement with him. Under the terms of the agreement, the parties agreed that a reasonable estimate of the intended and actual losses exceeded $7 million but were

---

[3] Petitioner's attorney mentioned this during the change of plea, clarifying that the actual loss versus the intended loss was an issue for sentencing (*id.*, p. 17).

less than $20 million; petitioner waived his right to appeal or bring a collateral attack; and he withdrew his objections to the presentence report. Then, before he was sentenced, petitioner gave his allocution. The Court assured him, "[Y]ou may say what you wish." Petitioner stated: "I signed this agreement because I've taken full responsibility for my actions and for what I've done; and I didn't want to waste the Court's time, and the Government's time, and the people's time" (Doc. 89, p. 9, *id.*). He then asked the Court to be lenient on his wife, who was a codefendant in the case, and to consider his son.

Several of petitioner's allegations mention going to trial. For instance, he says his attorney neglected to prepare him for testimony or establish any defenses for trial. As discussed above, that was not an option at the time of sentencing (unless petitioner had a basis for withdrawing his plea, which he does not argue). His specific claims about the sentencing agreement are that he hardly had time to read it and wanted a continuance. He also says his attorney raised his voice trying to convince petitioner to sign the agreement. Yet petitioner affirmed under oath that he had read the agreement, and the Court read it to him again, including the waiver provision.[4] If petitioner did not understand the agreement, or felt threatened by his attorney's raised voice, he should have said something when he had the opportunity. *See Stewart*, 198 F.3d at 986 ("The fundamental problem … is that [the petitioner] has already had one opportunity to state, under oath and in the presence of the district judge, whether his attorney gave such defective advice. That opportunity was the plea hearing … ."). Instead he told the Court that he had signed the agreement because he was taking "full responsibility for [his] actions." Taking full reponsibility for his actions is not consistent with the allegations he is making now. The Court finds that petitioner's acceptance of the sentencing agreement was knowing and voluntary.

Moreover, because petitioner's allegations are at odds with statements he made under oath, the allegations do not support a claim of ineffective assistance of counsel in connection

---

[4] Reviewing the waiver provision would have been required had petitioner signed a plea agreement at the time of his change of plea. *See* Fed. R. Crim. P. 11(b)(1)(N) (Before accepting a guilty plea, the court must address the defendant and ensure that he understands "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.").

with the negotiation of the sentencing agreement. The allegations do not meet the heavy burden required to show either (1) that his attorney's performance was objectively unreasonable or (2) that there is a reasonable probability that, but for the attorney's errors, petitioner would have insisted on going to trial. The Court would add that, inasmuch as petitioner's wife was prepared to testify against him, and he admitted his fraudulent activities to investigating agents, going to trial would not have been rational under the circumstances. *See Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[T]o obtain relief … a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances."). Therefore, the waiver of the right to collateral review under § 2255 in petitioner's sentencing agreement is enforceable. His claims in this motion, including those in grounds one and four, are barred. Petitioner's motion is denied.

### CERTIFICATE OF APPEALABILITY

Should a prisoner wish to appeal the dismissal of his § 2255 motion, he must secure a certificate of appealability from either the district court or the court of appeals. 28 U.S.C. § 2253(c)(1)(B); Fed. R. App. P. 22(b). A certificate may issue only upon "a substantial showing of the denial of a constitutional right," § 2253(c)(2), which means the prisoner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Further, when the district court has denied the motion on procedural grounds, the prisoner must *also* show that "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*.

The Court does not believe reasonable jurists would debate the procedural ruling that petitioner's waiver of his right to bring a collateral attack is binding. Therefore, petitioner does not make a substantial showing of a denial of a constitutional right. A certificate of appealability will not be issued.

## CONCLUSION

Petitioner's motion to vacate, set aside, or correct his sentence (Doc. 1) is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**. A certificate of appealability will **NOT** be issued. The Clerk of Court is **DIRECTED** to enter judgment in favor of respondent United States of America and against petitioner Jeffrey Wayne Rush.

**IT IS SO ORDERED.**

DATED: <u>November 13, 2013</u>

                                                     /s/ **WILLIAM D. STIEHL**
                                                             **DISTRICT JUDGE**